UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BROOK WEBBER, P.W. and RACHEL WEBBER, Plaintiffs | ) ) ) | CIVIL No: |
| v. | ) ) | _____ |
| CAROL CONDOMINIUM ASSOCIATION, INC. Defendant(s) | ) ) ) ) | |

## COMPLAINT

**NOW INTO COURT** through undersigned counsel, comes petitioners, Brook Webber, Rachel Webber, and P.W., minor child of Brook Webber, (the "Webbers") who respectfully represent and allege as follows:

## INTRODUCTION

1. This lawsuit seeks redress for disability and familial status discrimination in housing. Defendant has repeatedly steered families with children away from The Carol Condominiums and incentivized families and individuals without children with disabilities to rent in the same complex. Plaintiffs experienced at least one instance of steering, and repeated instances of discrimination in the terms and privileges of their housing. Plaintiffs come to this Court seeking damages and injunctive relief to remedy past violations and enjoin defendants from engaging in discriminatory practices.

## PARTIES

2. Plaintiff, Brook Webber, is an individual of the age of majority who is domiciled in New Orleans, Louisiana, and owner of a condominium located at 2100 St. Charles Ave, New Orleans, LA 70130.

3. Plaintiff, Rachel Webber, is an individual of the age of majority who is domiciled in

1

New Orleans, Louisiana

4. Plaintiff, P.W. is the minor child of Brook Webber and Kelli Webber who is domiciled in New Orleans, Louisiana

5. Made defendant herein is Carol Condominium Association Inc., (the "Association") which is a corporation organized and existing under the laws of State of Louisiana with its principal place of business in Louisiana.

## JURISDICTION AND VENUE

6. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331, because this action involves a federal question, 28 U.S.C. § 1343, because this action involves civil rights issues, and 42 U.S.C. § 3613(a)(l)(A), because this action involves a discriminatory housing practice. This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367

7. Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 139l(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Louisiana.

## FACTS

8. At all times relevant herein, Defendant, the Carol were responsible for the management of the common areas of the Carol Condominium complex located at 2100 St. Charles Ave, New Orleans, LA 70130, as a condominium association pursuant to a condominium regime including property owned by Plaintiffs.

9. The Properties are dwellings within the meaning of 42 U.S.C. §3602(b)

10. The Recorded Declaration of Condominium provides that common elements of the Association include but are not limited to hallways, stairways, entrances and exits, lobby,

elevator, heating and air-conditioning units. The Declaration further provides that each unit owner shall have the right to use the common elements and that right shall extend to their agents, servants, tenants, family members, customers, invitees and licensees. Additionally, the Declaration requires that maintenance, repairs and replacements within the common elements "shall be the responsibility of and shall be furnished by the association." Moreover, any amendment or, modification or recission of the Declaration must be made with the consent of at minimum 80% of unit owners

11. On July 15, 2008 P.W. was born to Kelli Webber and Brook Webber. P.W. was diagnosed with Trisomy 21, commonly known as Down Syndrome, which is readily recognizable by his facial features and mannerisms. P.W. is an exceptional child who strives to integrate in daily societal practices typical for a child of his age, such as taking out the trash, swimming, attending Mardi Gras parades, socializing with others, attending school, as much as possible to support his development. Despite his immense developmental progress, P.W. maintains significant limitations to motor functioning and cognitive functioning and requires numerous accommodations to his daily life to meet his full potential.

12. On or around October 2017, Rachel Webber and Brook Webber (father and step-mother to P.W.) sought housing that would support the needs of P.W. The Petitioners initially believed the condo would be beneficial for their family for its numerous amenities including armed security, front desk personnel, locked gates and entry which were only able to be opened by security, valet car services, a heated swimming pool and its proximity to the desired school of choice for P.W..

13. On or around October 2017, then building manager for the Association, Carol, attempted to steer the Webbers from purchasing property at the Association and instead look elsewhere.

Carol, specifically asked the Webbers what P.W's diagnosis was and whether he was "high functioning." The Building manager specifically told the Webbers "this isn't really a place that suited for young people or children. I don't know how comfortable you would feel here."

14. Shortly thereafter the Webbers purchased two adjoining condominium units at the Carol.

15. On or around November 10, 2017, the Webbers commenced moving into their new home and were informed by the Association that they could not move their bed into their home without the permission of the Association to use the larger elevator at a specific date and time. Building security of the Association informed the Webbers that the Association was attempting to make the situation difficult for the Webbers.

16. Similarly, on or around November 2017, the Webbers were informed by the Association that they were only to utilize contractors from a list provided by the Association for any and all work that would be executed inside of their condo. In November of 2017 the Webbers required service on the air-conditioning units and were told by the Association, contrary to the recorded Declaration, and prior to any inspection, that the air-conditioning units were "unserviceable" and that all contractors approved by the Association would "condemn" the units and require the Webbers to purchase new ones.

17. In November of 2017, the Webbers requested that the Association cease placing loose items under the Webbers door to prevent injury to P.W.. . The Webbers explained that P.W. struggled with mobility and coordination requiring loose items to be secured to prevent injury. Despite the Association's Bylaws and Declaration which provide that the Association shall provide notice to it residence via mail, the Association repeatedly chose to slip loose papers under the door of the Webbers residence. The Webbers repeatedly requested that the Association utilize the Webber's mailbox or email to send correspondence so as to prevent injuries to P.W.. The

4

Association refused, stating that it "was their way" and that any slip and fall inside their unit would be covered by the Webber's homeowners insurance. the Association refused to provide reasonable accommodation and continued to purposely and maliciously create hazards to the Webbers and their disabled child for approximately two years.

18. From November 2017 to June 2018, Rachel Webber worked night shifts which would require her to return home at hours not typical for the Carol's primarily elderly residents. On numerous occasions, Rachel Webber was denied access to the Carol and her home for extensive amounts of time as the Security Guard employed by the Carol was sleeping and did not unlock the entry gates. The Webbers notified the Carol of their need to gain entry to the Carol and their home at late hours and the need for the security guard to be awake and alert to ensure the safety of residents. For nine (9) months, Rachel Webber continued to be denied entry to her home for extensive amounts of time while standing alone on St. Charles in the middle of the night pleading for the security guard to allow her entry. The carol refused the Webber equal access to the Carol because of their familial status and disability.

19. On October 09, 2018, the Webbers returned home to discover a water leak from the ceiling which caused significant damage to ceilings, walls, and floors of numerous rooms. Brook Webber notified maintenance of the issue and after assessment of the leak it was discovered that the air conditioning units, twelve floors above the Webbers home had backed up and the water pans had over flowed into the Webbers home. Contrary to the Association's Recorded Declaration which imputes maintenance and repair of common elements including air-conditioning units on the Association, the Association imputed liability for damages directly upon the Webber family but not on other residents.

20. Similarly, in November of 2019 the Webbers discovered another water leak coming from

their ceiling. Then board President told the Webbers, without any inspection, that it was not the Association's "problem," and that repairs were the duty of the Webbers. After the Webbers presented evidence to the Board that the cause of the leak was located outside of the Webbers unit, the Board president agreed to repair the issue. The President later recanted, and told the Webbers "f*** you." After more than three months of attempting to have the Association repair common elements, the Webber's made the repairs at their own costs to mitigate further damage caused by the leak.

21. A majority of residents at the Carol are retired and no longer employed rendering them available to use the Association's amenities during typical business hours. Distinctly, the Webbers who maintain employment and have a child who attends school during the day. the Webbers are the only family with a school aged child in the complex and the only family with a child with disabilities. As the Webbers are not retired, unlike a majority of Carol Condominium's residents, the Webbers use of the of Carol Condominium's amenities, such as the pool is primarily limited to weekends when they are not in school or working. The Association purposely and maliciously chose to routinely close the pool for several hours at a time, on weekends to prevent and/or limit the Webbers from using the common element. When the Webbers requested that pool maintenance be completed after 7:00pm when the pool was closed or during the week, when it was not being utilized, the Board claimed this it was not convenient for them. The Board also refused to allow the pool to be heated purportedly due to the lack of residents using the amenity. Further, the Association told the Webbers that there were designated hours in which children could not use the pool; the Association elected not to enforce this rule against other residents and their guests, only the Webbers and their disabled child.

22. On the infrequent occasion that the Webbers were able to use the pool, P.W. would

obtain chemical burns from contact with unsecured chlorine tablets deposited on the floors of the pool. The Webbers explained to the Board that P.W.'s limitations prevented him from understanding the dangers of such chemicals and requested that the Association make the reasonable modification of securing chlorine tablets in the skimmer basket or pool floater as is typically done in commercial pools. The Association responded by stating that P.W.'s safety was not a factor and they would continue to leave unsecured dangerous chemicals in the pool used by a child with a disability.

23. Prior to Covid, the Association allowed residents and their guests to watch parades from the lobby. The Association prohibited P.W. and his elderly grandmother from staying in the lobby stating that it was not an area for children.

24. Employees of the Association continually use discriminatory language against cognitive disabilities in the presence of, and regarding, the Webbers and P.W.

25. The Association's Board members requested staff members interact with P.W. as little as possible

26. On May 27, 2020, the Association promulgate Rules requesting that all residents prohibit children under the age of 12 from entering the Carol Condominium. Brook Webber discussed his concern with this rule to Association Board member, Larry. Brook Webber explained that P.W. would be moving to the Carol Condominiums fulltime to attend a special needs school. Larry responded "not if the Board has anything to do with it" and that the Carol Condominium was a communal living space geared toward retirement age and above tenants and he didn't not think P.W. would be a "good fit." Mr. Webber suggested that the Association make an offer to purchase the property from the Webbers; Association Board member, Larry stated he wouldn't need to.

27. In October of 2020, the Association's Board refused to allow any reasonable

modifications to face covering rules that were suggested by the Webbers including the use of face shields, the Webbers sanitizing areas the come in contacts with, the Webbers utilizing unused service elevators and back doors so as to avoid other persons and the lobby. the Association demanded specific medical diagnostics from the Webbers. The Association's Board then elected to have a board hearing specifically pertaining to the Webbers, at a date and time the knew the Webbers were unavailable. Following the Board hearing, the Association once again sought protected health information from the Webbers.

28. On December 14, 2020, The Association filed a Petition for Preliminary and Permanent Injunction and for Collection of Fines against the Webbers in Orleans Parish Civil District Court, Case No. 2020-10577. The Association sought to impose fines in excess of $16,000 on the Webbers for alleged violations of rules that the board was without authorization to implement. The Board selectively enforces said rules on the Webbers because of their familial status and disability. Further, the Association's Board only sought Civil Suit against the Webbers despite numerous violations by other residents and staff of the Carol.

29. On December 23, 2020, the Association implemented its most recent rules governing the pandemic. The rules prohibit anyone from entering or exiting the Carol Condominium without a cloth face covering, the Rules do not provide an exemption for those with a disability or those that can social distance unlike the Statewide order. The Rules also prohibit the Webbers from allowing P.W. in the Carol Condominiums or their home if he has been on an airplane, or has "symptoms of any type." The Rules further require that the Webbers must inform the Association of confidential health information. Moreover the rules prevent the Webbers from socially distancing by prohibiting the use of doors and elevators not typically used by other residents.

30. The Association has and continues to discriminate against the Webbers because of their

familial status and disability.

## FIRST CAUSE OF ACTION
### (Disparate treatment- Discrimination in terms, conditions, or privileges in violation of 42 U.S.C.§3604(f)(2))

31. Plaintiffs incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

32. Plaintiff is an aggrieved persons under Section 802(i) of the Fair Housing Act. 42 U.S.C. § 3602.

33. Defendant had actual and constructive knowledge of Plaintiff's disability

34. Defendant imposed fines and other terms and conditions on plaintiffs because of their familial status and disability.

35. Defendant treated plaintiffs differently because of their familial status and disability.

36. Defendant threated Plaintiff, Brook Webber with Eviction on several occasions because of the Plaintiff's familial status and disability.

37. Defendant imposed fines in a discriminatory manner because of Plaintiffs disability and familial status.

38. Plaintiffs request that they be awarded all available relief including but not limited to, a declaratory judgement that acts and practices of the Defendant complained of herein are in violation of the laws of the United States, injunctive relief an award of compensatory and punitive damages, attorney's fees, expense, and costs and all other and further relief as to this court appears necessary and proper.

## SECOND CAUSE OF ACTION
### (Failure to Reasonably accommodate in violation of 42 U.S.C.§3604(f)(3))

39. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

40. Defendant through its Board and agents were personally involved in and/ or had authorized and/or ratified each and every discriminatory act and denial of accommodation of plaintiffs.

41. At all time material, defendant had actual knowledge that plaintiff had a disability.

42. Plaintiff requested reasonable accommodations in defendants rules, policies, practices, and or services.

43. The requested accommodations were necessary to afford plaintiff equal opportunity to use and enjoy the unit.

44. The requested accommodations would not have imposed an undue financial or administrative burden or cause a fundamental alteration of defendants operation.

45. Defendant did not grant Plaintiff's requests or engage in an interactive process to determine whether any reasonable accommodations could have been made to Plaintiff.

46. Defendants failure to modify its existing policies and practices to accommodate the disability of plaintiff is discriminatory and unlawful.

47. Plaintiffs request that they be awarded all available relief including but not limited to a declaratory judgement that the acts and practice of the Defendant complained of herein are in violation of the laws of the United States, injunctive relief, an award of compensatory and punitive damages, attorneys fees, expenses, and costs, and all other and further relief as to this Court appears necessary and proper.

### THIRD CAUSE OF ACTION
**(Disparate Treatment- Discrimination in Terms Conditions, or Privileges in violation of 42 U.S.C.§3604(f)(2))**

48. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

49. Defendant had actual knowledge of Plaintiff Tenant's disability.

50. Defendant imposed fines and other terms and conditions including surveillance of the unit, upon Plaintiff because of disability and familial status.

51. Defendants treated Plaintiffs differently because of disability and familial status and did not want them residing in the Carol.

52. Defendant threatened Plaintiff with eviction based on Plaintiff's disability and familial status.

53. Plaintiffs request that they be awarded all available relief including but not limited to a declaratory judgement that the acts and practice of the defendant complained of herein are in violation of the laws of the United States, injunctive relief, an award ot compensatory and punitive damages, attorneys fees, expenses, and costs, and all other and further relief as to this Court appears necessary and proper.

## FOURTH CAUSE OF ACTION
**(Interference, coercion, or intimidation in violation of 42 U.S.C.§3617))**

54. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

55. The above actions, including the surveillance of Plaintiff unit and the imposition of fines against Plaintiff because of Plaintiff's disability, defendants have unlawfully coerced, intimidated, threatened or interfered with plaintiff in the exercise of their enjoyment of their rights granted or protected by the Fair Housing Act on the basis of disability and familial status in violation of the Fair Housing Amendments Act and implementing regulations, 24 C.F.R.§100.400.

56. Defendant also utilized the imposition of fines to attempt to forcibly evict Plaintiffs solely based of disability and familial status.

57. These actions on the part of the defendant constituted unlawful interference, coercion,

11

or intimidation in violation of 42 U.S.C. §3617.

## FIFTH CAUSE OF ACTION
### (Negligent training and supervision in violation of Louisiana state law)

58. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

59. Upon information and belief, Defendant failed to adequately train and/or supervise its employees, including security guards and maintenance persons with respect to Plaintiffs disability, housing discrimination, proper compliance with the fair housing amendments act, the unlawful nature of attempting to forcibly evict a tenant based on disability and familial status.

60. As a result of its status as a condominium association, which acts as the governing body of the Carol Condominiums, Defendant has a duty to properly train and supervise its employees with respect to actions that could constitute housing discrimination in violation of the Fair housing Act, Section 504 of the Rehabilitation Act, and relevant state antidiscrimination laws.

61. By failing to properly train and supervise its employees with respect to housing discrimination, Defendant breached that duty.

62. Defendant's breach of its duty to train and supervise its employees with respect to housing discrimination resulted in damage to Plaintiff.

63. Plaintiffs have suffered damages as a result of defendant's failure to adequately train and supervise its employees.

## SIXTH CAUSE OF ACTION
### (Section 504 of the Rehabilitation Act 29 U.S.C.§794))

64. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

65. Defendants are corporations principally engaged in the business of providing housing.

66. Upon information and belief Defendants all receive federal financial assistance to

administer the housing.

67. Plaintiff is disabled as that term is defined in Section 504.

68. By refusing to accommodate Plaintiff, seeking to prevent Plaintiff's use of housing, and seeking to impose greater burdens on Plaintiff than non-disabled residents, Plaintiff is discriminating against Plaintiff because of his disability.

### SEVENTH CAUSE OF ACTION
### (Violation Of The Louisiana Equal Housing Opportunity Act( L.S.A. R.S.§51:2606)

69. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

70. Under the relevant jurisprudence, a violation of the Fair Housing Amendments Act

71. Defendants have discriminated against Plaintiff, P.W. disabled individual in the exercise or enjoyment of rights guaranteed by the Louisiana Equal housing opportunity act in violation of L.S.A. R.S.§51:2606.

72. Defendants discriminated against Plaintiffs as persons associated with an individual with a disability.

73. Pursuant to L.S.A. R.S.§51:2613, Plaintiffs are entitled to recover actual and punitive damages and reasonable attorneys fees and costs.

### EIGHTH CAUSE OF ACTION
### (Tort (Civil Code Article 2315))

74. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

75. Defendant, through its hired security guards, refused to grant Plaintiffs entry to the condominium unit he owns.

76. Defendant threatens to continue to prohibit the Webbers Access to their home.

77. Defendants have no right to dispossession of the owner of his/her condominium unit.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff prays that this Court:

A. Declare that the actions and omissions of the Defendants, as set forth above, violate the Fair Housing Act and its implementing regulations, and the Rehabilitation Act and its implementing regulations;

B. Enter a preliminary and permanent injunction enjoining the Defendants from (1) refusing to provide reasonable accommodations to Plaintiffs, and (2) continuing the Injunction and Collection of Fines proceedings against Plaintiff;

C. Enter a judgment against Defendants jointly and severally, for compensatory and punitive damages that Plaintiff has suffered as a direct and proximate result of Defendants' violations of the Fair Housing Act;

D. Enter an order that the Plaintiffs shall not be required to post bond as security for the issuance of a temporary restraining order or preliminary injunction;

E. Enter a judgment for Plaintiff's attorneys fees and costs; and

F. Grant the Plaintiff such further relief as this Court deems just and proper.

Respectfully submitted,

_____
J. DOUGLAS SUNSERI (#19173)
NICAUD & SUNSERI LAW FIRM, L.L.C.
A Group of Professional Law Corporations
3000 18th Street
Metairie, Louisiana 70002
Telephone: (504) 837-1304
Facsimile: (504) 833-2843
Email: jdsunseri@nslawla.com
*Attorneys for Plaintiffs*